```
                    IN THE UNITED STATES DISTRICT COURT
                    FOR THE SOUTHERN DISTRICT OF TEXAS
                              HOUSTON DIVISION


BAC HOME LOANS SERVICING, LP,    §
                                 §
     Plaintiff,                  §
                                 §
v.                               §   CIVIL ACTION NO. H-09-2539
                                 §
TEXAS REALTY HOLDINGS, LLC,      §
et al.,                          §
                                 §
     Defendants,                 §
```

**MEMORANDUM AND RECOMMENDATION**

Pending before the Court[1] are Plaintiff's Motion for Preliminary Injunction (Docket Entry No. 33) and Plaintiff's Amended Motion for Preliminary Judgment (Docket Entry No. 107). In the motions, Plaintiff BAC Home Loans Servicing, LP, ("Plaintiff") seeks to enjoin Defendant Nancy Groves ("Groves") from disposing of or encumbering various properties. Groves did not appear at the

---

[1] This case was referred to the undersigned magistrate judge pursuant to 28 U.S.C. § 636(b)(1)(A) and (B), the Cost and Delay Reduction Plan under the Civil Justice Reform Act, and Federal Rule of Civil Procedure 72. Docket Entry No. 10.

preliminary injunction hearing.[2]  The court makes the following recommended findings of fact and conclusions of law.

**A.  The Parties**

Plaintiff is a Texas partnership authorized to do business in the State of Texas.  It is a citizen of North Carolina.[3]

Groves is a resident and citizen of the State of Texas.[4] Groves was served with process on February 2, 2010.[5]  On April 7, 2010, Groves filed an answer to this suit.[6]

**B.  The Alleged Scheme**

Plaintiff presents allegations supporting its assertion that "Groves participated in a complex scheme designed to extinguish the lien interests of mortgagees like [Plaintiff] and deprive such

---

[2]   On June 25, 2010, Groves filed objections to Plaintiff's Proposed Findings of Fact and Conclusions of Law, claiming that she was denied due process and her opportunity to be heard at the preliminary injunction hearing held on May 19, 2010, because she did not receive the mailed notice of hearing before the hearing actually occurred.  Docket Entry No. 118, p. 1.  At the hearing, however, Plaintiff's counsel stated that he sent Groves a copy of the electronic notice on the day that he received notice, that is, May 17, 2010.  The hearing was held on May 19, 2010.  Thus, Plaintiff should have been on notice of the hearing, and any further objections with respect to notice may be made in response to this Memorandum and Recommendation.

[3]   Plaintiff's First Amended Complaint, Docket Entry No. 66, p. 2.

[4]   Id. at 3.

[5]   See Return of Service, Docket Entry No. 67.

[6]   Answer, Docket Entry No. 99.

2

mortgagees of the excess proceeds resulting from the transferred tax-lien foreclosure sales Groves helped execute."[7]

On August 8, 2007, Groves purchased a unit ("Willis-Pomares property") from the Paramount Lofts Condominiums via foreclosure sale, which had been set by the condominium association because the unit's Harris County property taxes were past due.[8] Groves paid approximately $4,800 for the property, on which BAC had a pre-existing interest.[9]

On August 27, 2007, Groves executed a deed of trust transferring the tax lien under section 32.06 of the Texas Tax Code to Dampkring, LLC ("Dampkring").[10] G.P. Matherne ("Matherne") acted as the trustee on the deed of trust.[11] Plaintiff alleges that this transfer "was designed to purge all prior interests in the property from the chain of title."[12]

Therein, Groves consented to the transfer of the tax lien and promised to repay the tax loan and to pay $750 in transfer costs

---

[7] Plaintiff's Proposed Findings of Fact and Conclusions of Law, Docket Entry No. 115, p. 2.

[8] Plaintiff's Amended Motion for Preliminary Injunction ("Motion for Injunction"), Docket Entry No. 107, Ex. 3, First Trustee's Deed for Willis-Pomares Property.

[9] Id.

[10] Id. Ex. 6, Deed of Trust Transferring Tax Lien.

[11] Id.

[12] Plaintiff's Proposed Findings of Fact and Conclusions of Law, Docket Entry No. 15, p. 2.

and attorney fees.[13] She also obtained the right to solely receive any excess proceeds resulting from any tax sale that might be conducted under the deed of trust.[14]

In exchange, Dampkring agreed to pay the past due property taxes, totaling about $6,642.86, and obtained the right to foreclose on Groves' property if she failed to repay the loan or pay $750 in fees by September 6, 2007.[15]

Dampkring paid the taxes and received the tax lien on the property.[16] However, Groves failed to pay the $750 fee within the time allotted.[17]

Upon Groves' default, Dampkring foreclosed on the deed of trust by tax sale conducted on November 6, 2007, by G.P. Matherne, which garnered approximately $90,000 in net proceeds that went to Groves.[18] This sale effectively extinguished all other existing liens on the property, and no other mortgagee received any of the excess proceeds. Less than three months elapsed between Groves'

---

[13] Id.; Motion for Injunction, Docket Entry No. 107, Ex. 16, Consent to Transfer of Tax Lien.

[14] Motion for Injunction, Docket Entry No. 107, Ex. 6, Deed of Trust Transferring Tax Lien.

[15] Id.

[16] Id. Ex. 9, Trustee's Deed.

[17] Id.

[18] Id.

initial purchase of the property on August 8, 2007, and its subsequent foreclosure and sale on November 6, 2007.[19]

Groves had previously defaulted on multiple tax loans involving Charles P. Cowin ("Cowin") and Matherne.[20] In each of these prior transactions, Cowin was the lender or instigated the loan to Groves through another entity such as Dampkring.[21] Cowin and Matherne would then initiate and complete the tax sales after Groves defaulted on each of her tax loans.[22]

Cowin controlled Dampkring. Dampkring's tax sales, including that of the Willis-Pomares property, began with a call from Cowin to Matherne.[23] Through Dampkring, Cowin and his son Robert used their own funds to pay the taxes for the properties, after which the tax lien would be transferred, Groves would default, and Dampkring would foreclose.[24] Cowin found people to buy the properties at the sales, which he attended and monitored.[25]

---

[19] Id. Ex. 9, Trustee's Deed.

[20] Id. Ex. 6, Deed of Trust Transferring Tax Lien; Ex. 9, Trustee's Deed; Ex. 15, Trustee's Deed; Ex. 18, Trustee's Deed; Ex. 19, Trustee's Deed.

[21] Id.

[22] Id.

[23] Id. Ex. 10, Deposition of Matherne, pp. 41-42.

[24] Id. Ex. 14, Pick-Up Receipt for Transfer of Tax Liens.

[25] Id. Ex. 11, Deposition of Tran, pp. 32-38, 67-68; Ex. 12, Deposition of Moss, pp. 22-24; Ex. 13, Deposition of Shen, pp. 15-17.

Groves was not the only one to whom Dampkring extended such loans. Dampkring also gave loans to Texas Realty Holdings ("TRH"), which also defaulted on each loan shortly after each debt was incurred.[26]

Specifically, in 2007, Cowin through Dampkring extended several loans to TRH, including one on June 26, 2007.[27] Three weeks later, TRH had defaulted on that loan and Dampkring was preparing to foreclose on the underlying property, but at the same time Dampkring also extended another tax loan to TRH for another property.[28] After the foreclosure of the first property, and after TRH had defaulted on the second loan, TRH was given a third tax loan on a third property, which it later defaulted on and which was again followed by foreclosure by Dampkring.[29] Groves bought one of these properties for $200,000 shortly after she defaulted on the Willis-Pomares property.[30]

At each sale, including the sale of the Willis-Pomares property, Matherne sold the property for a value much higher than that of the tax lien but for much less the property's fair market

---

[26] Id. Ex. 4, Deed of Trust; Ex. 5, Deed of Trust; Ex. 17, Substitute Trustee's Deed.

[27] Id. Ex. 3, First Trustee's Deed for Willis-Pomares Property.

[28] Id. Ex. 5, Deed of Trust.

[29] Id. Ex. 20, Trustee's Deed.

[30] Id. Ex. 17, Substitute Trustee's Deed.

value.[31]  For example, the past due taxes on the Willis-Pomares property were $6,642.86, the fair market value was $208,362, and it sold for $98,000.[32]  The excess sale proceeds were never applied to any of the other lienholders on any of the properties.[33]

**C.   Elements of Preliminary Injunction**

Before a district court will issue a preliminary injunction, a plaintiff must establish: (1) a substantial likelihood of success on the merits; (2) a substantial threat of irreparable injury if the injunction is not issued; (3) that the threatened injury, if the injunction is denied, outweighs any harm that will result if the injunction is granted; and (4) that the grant of an injunction will not disserve the public interest.  <u>Palmer ex rel. Palmer v. Waxahachie Indep. Sch. Dist.</u>, 579 F.3d 502, 506 (5th Cir. 2009).

**D.   Substantial Likelihood of Success on the Merits**

Under the Texas Uniform Fraudulent Transfer Act ("TUFTA"), any obligation a debtor incurs "with actual intent to hinder, delay, or defraud any creditor of the debtor" may be voided; a creditor may obtain "an injunction against further disposition by the debtor or a transferee, or both, of the asset transferred or of other

---

[31]   Matherne's Amended Answer, Docket Entry No. 89, ¶ 44.

[32]   Motion for Injunction, Docket Entry No. 107, Ex. 9, Trustee's Deed, p. 3; Ex. 13, Deposition of Shen; Ex. 16, Consent to Transfer of Tax Lien.

[33]   Matherne's Amended Answer, Docket Entry No. 89, ¶ 44.

property[.]"  Tex. Bus. & Com. Code Ann. §§ 24.005(a)(1), 24.008(a)(3)(A).

A plaintiff must satisfy three elements to establish a claim under TUFTA: (1) a creditor-debtor relationship must exist between the parties; (2) the debtor must have incurred an obligation; and (3) the debtor must have incurred the obligation with the actual intent to hinder, delay, or defraud the creditor. Tex. Bus. & Com. Code Ann. § 24.005(a)(1).

Under TUFTA, a "creditor" is a person "who has a claim." Tex. Bus. & Com. Code Ann. § 24.002(4). A "claim" is "a right to payment or property, whether or not the right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, disputed, undisputed, legal, equitable, secured, or unsecured." Tex. Bus. & Com. Code Ann. § 24.002(3). Plaintiff has a claim on the Willis-Pomares property because it is the agent of the holders of the notes and deeds of trust at issue and, thus, has a right to payment for the property or a right to the property itself if payment was not made. Thus, under TUFTA, Plaintiff is a "creditor" because it has a "claim" on the property.

Under TUFTA, a "debtor" is any "person who is liable on a claim." Tex. Bus. & Com. Code Ann. § 24.002(6). When Groves purchased the Willis-Pomares property, she became liable on Plaintiff's claim. See, e.g., Aquaduct, L.L.C. v. McElhenie, 116 S.W.3d 438, 443 (Tex. App.—Houston [14th Dist.] 2003, no pet.).

Thus, under TUFTA, Groves is a "debtor," and the first element of the test is met.

Groves incurred the obligation of paying the outstanding liens on the property when she purchased it at the foreclosure sale, and thus the second element of the test is met. See Tex. Prop. Code Ann. § 82.113(b) (providing that a condominium association's lien for unpaid assessments is junior to liens recorded before the assessment was delinquent).

Plaintiff has also made a substantial showing that the third element of the test has been met. First, Plaintiff has made a substantial showing that Groves was an "insider" with Cowin and Dampkring because she had received multiple tax loans from them in a short amount of time and defaulted on all of those loans. Second, the timing of the transactions was such that Groves obtained several tax loans from Cowin and each time defaulted within three months of incurring the obligation. See, e.g., Tel. Equip. Network, Inc. v. TA-Westchase Place, Ltd., 80 S.W.3d 601, 609 (Tex. App.—Houston [1st Dist.] 2002, no pet.) (holding that evidence that the debtor defaulted on obligation to defendant-transferee shortly after completing transfer was significant and suggestive of an actual intent to defraud the creditor). Third, Groves' central role in the alleged scheme is strong evidence of her actual intent to defraud Plaintiff. See, e.g., S.E.C. v. Res. Dev. Int'l, LLC, 487 F.3d 295, 302 (5th Cir. 2007) (holding that

evidence that the defendant-debtor operated to facilitate Ponzi scheme alone established defendant's actual intent to defraud creditor).

Thus, Plaintiff has made a substantial showing that Groves knowingly purchased the Willis-Pomares property and purposely defaulted so Dampkring or Cowin could foreclose, as had happened with other similar properties multiple times before.  Each time, Groves demonstrated no ability to repay her debt, and each time Matherne, at Cowin's request, would then sell the property for significantly less than half of the property's fair market value.

Thus, the court concludes that there is a substantial likelihood that Plaintiff will prevail on the merits of its TUFTA claim again Groves.

**E.  Substantial Threat of Irreparable Injury**

A substantial threat of irreparable injury may exist if a plaintiff is left without an adequate remedy because the defendant dissipates property that may be used to secure a judgment. Productos Carnic, S.A. v. Cent. Am. Beef & Seafood Trading Co., 621 F.2d 683, 686 (5th Cir. 1980).

Groves has transferred two properties to Khyber Holdings, LLC, an entity managed by Groves' former co-defendant Lance Kerness,[34]

---

[34]  On June 28, 2010, the court adopted the undersigned's Memorandum and Recommendation recommending Plaintiff's motion for default judgment against Lance Kerness be granted.  Memorandum and Recommendation, Docket Entry No. 117; Order Adopting Memorandum and Recommendation, Docket Entry No. 119.

10

since Plaintiff filed this lawsuit.[35]  Each of the properties was transferred for little or no consideration.[36]

The court has already found that Plaintiff has presented substantial evidence that Groves intended to defraud her creditors, including Plaintiff.  This coupled with the transfer of properties after the start of this lawsuit is strong evidence that Plaintiff may be without an adequate remedy against Groves by the time of the conclusion of this lawsuit should Plaintiff prevail.

Thus, the court finds that a substantial threat of irreparable injury exists.

**F.   Threatened Injury Outweighs Harm of Injunction**

Any harm to Groves will be minimal, as she may dispose of or encumber her property if either she and Plaintiff can agree or if she is granted leave of court to do so.  The court has already found that Plaintiff may be subject to substantial irreparable harm if the injunction is not issued.

The damage an injunction might cause a nonmoving party may be outweighed by the threat of an ineffective remedy for the plaintiff.  <u>Productos Carnic</u>, 621 F.2d at 687.  Accordingly, the court concludes that the threatened injury is greater than any injury Groves may incur as a result of this injunction, and

---

[35]   Motion for Injunction, Docket Entry No. 107, Ex. 24, Khyber Holdings, LLC; Ex. 25, Special Warranty Deeds.

[36]   <u>Id.</u> Ex. 25, Special Warranty Deeds.

therefore that the equities weight in favor of granting the injunction.

**G.  Public Interest**

An injunction must not disserve the public interest. <u>Palmer</u>, 579 F.3d at 506. Here, the public interest will not be disserved by limiting Plaintiff's ability to transfer her properties. On the contrary, the injunction may protect the public interest by preventing further fraudulent transfers on the part of Groves.

**H.  Injunction Issued**

Having found that Plaintiff has presented evidence sufficient for a preliminary injunction to issue, the court **RECOMMENDS** the following:

1.  That Groves be **ENJOINED** from selling, assigning, transferring, or encumbering any interest she may have in any real property, including any equity she may have in such property, except as agreed between Groves and Plaintiff or by leave of court. "Real property" shall not include Groves' homestead.

2.  That Groves be further **ENJOINED** from selling, assigning, transferring, encumbering, or dissipating any personal property, including any equity she may have in such property, except as agreed between Groves and Plaintiff or by leave of court. "Personal property" shall mean all property other than real property, whether tangible or intangible, and includes any jewelry, vehicles, stock, certificates of deposit, notes issued in Groves'

favor, bonds, annuities, interests in partnerships or any other business entity, and accounts receivable. "Personal property" shall not include money expended to meet personal, family, or household obligations or money expended in the ordinary course of conducting business.

**I.   Bond Requirement**

Federal Rule of Civil Procedure 65(c) provides that the court may issue a preliminary injunction "only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." However, the amount of security required is a matter for the discretion of the trial court, which may elect to require no security at all. Kaepa, Inc. v. Achilles Corp., 76 F.3d 624, 628 (5th Cir. 1996).

The purpose of the bond is to prevent damages that a party may incur from a wrongful injunction. Fed. R. Civ. P. 65(c). Here, the court has narrowly tailored the injunction in such a way as should prevent any damages to Groves. The injunction prevents Groves from transferring her properties but does not prevent her from conducting business on or otherwise using her properties. Thus, Groves remains free to possess and use her properties. The injunction merely limits, without eliminating, her ability to part with or encumber her properties. Groves may still sell, transfer,

or encumber her properties by agreement with Plaintiff or by leave of court.

Thus, the court **RECOMMENDS** that no security be required.

### J.  Conclusion

Based on the foregoing, the court **RECOMMENDS** that Plaintiff's Motion for Preliminary Injunction (Docket Entry No. 33) and Plaintiff's Amended Motion for Preliminary Injunction (Docket Entry No. 107) be **GRANTED.**

The Clerk shall send copies of this Memorandum and Recommendation to the respective parties who have fourteen days from the receipt thereof to file written objections thereto pursuant to Federal Rule of Civil Procedure 72(b) and General Order 2002-13.  Failure to file written objections within the time period mentioned shall bar an aggrieved party from attacking the factual findings and legal conclusions on appeal.

The original of any written objections shall be filed with the United States District Clerk electronically.  Copies of such objections shall be mailed to opposing parties and to the chambers of the undersigned, 515 Rusk, Suite 7019, Houston, Texas 77002.

**SIGNED** in Houston, Texas, this 6th day of July, 2010.

Nancy K. Johnson
United States Magistrate Judge